And we will hear arguments. I gather you all want to argue the first two cases together as a single argument. Is that understanding correct? That is my intention, Your Honor. Okay, so two cases, both called Bannum, Inc. v. United States, 14-5085 and 14-5086. Mr. Huffman. Good morning. May it please the Court. My name is Justin Huffman of the Camargo Law Firm and I am representing Bannum, Inc., the appellant in these two matters. The issue in these two appeals is virtually identical. Both protests were dismissed on standing grounds on the basis that Bannum improperly conditioned its bids based upon uncertainties relating to the incorporation of PREA, the prison rape. It wasn't so much that it improperly, right, conditioned its bid. The conditioning of its bid had an adverse effect on understanding. Yes, Your Honor. I mean, there was nothing wrong in what they did, right? Yes, Your Honor. Can I just be clear? You have not disputed in this litigation that your proposal was in fact conditioned. That is to say, you never told the CFC, and I don't think you have told us, that there has been a misunderstanding about what your bid was. And in fact, this was a bid that, if accepted, would have committed you for the fixed price to do everything necessary to comply with PREA. Yes, Your Honor, that's exactly what you just said is exactly correct. Had Bannum's bid been accepted, it would have been bound by its bid. Oh, okay. I realize I think I maybe built too many conditions in. I thought that it was agreed below that your bid did not offer a fixed price that included PREA compliance, but in fact your bid said, here's our price, PREA compliance is going to be extra. Did you ever tell the CFC that your bid, in fact, was a fixed price including PREA compliance? The statement made in Bannum's letter did state that the PREA may or may not cost extra. They could not determine that because at the time there was no discussion as to what the PREA would entail because Bannum had repeatedly raised various concerns throughout the course of the bidding or throughout the course of the procurement. And in the 5086 matter, the Florence matter, I believe it was, the BOP had even come back and said that we will provide you more information when it becomes available. Here's why, at least in my current way of thinking, this seems really quite critical. Put aside your challenge to the term of the solicitation. You say PREA compliance duties should not have been included because we don't know what they were, etc. Put aside that. You also have, and let's just assume, and we'll get back to this, that you've waived that challenge. So we now have one more challenge, which is taking the PREA compliance included term of the solicitation as part of the solicitation. Nevertheless, there was a defective evaluation of the bids. And on that question, the CFC said the bid you submitted was not fixed price. It did not promise to eat all PREA compliance costs without additional money. And so unless you told the CFC, to the contrary, we actually would have eaten all those costs, then it seems to me there's a real question whether you're just non-responsive on that. Yes, Your Honor. I believe Banham did make that exact argument below. They did argue that had its bid been accepted, it would have been bound by it. Do you happen to have a record citation for that? Because I did not see that. I do not have that handy. I can get that for you. Okay. Banham first contends that it did not lack standing because it suffered a non-trivial competitive injury. Banham contends that a protesting party has the standing to challenge an award when a prospective bidder challenges the terms of the solicitation prior to submitting a bid. But do you agree that one needs to divide your challenges into two, namely the challenge to the inclusion of the PREA compliance requirement in the solicitation, and then separately you've got some other challenges about the allegedly defective evaluation of the two competitors in each of the South Carolina and the Mississippi situations? Well, at this point, Your Honor, I don't believe that the Court of Federal Claims addressed or got to that second point. Right. But in terms of our analysis, your principal complaint is over the solicitation. Why is it that our waiver cases do not bar that claim on the ground that while you, in a very loose and informal sense, complained about this term, objected to it, used the word protest in one of the cases, didn't use the word protest in another, you didn't diligently pursue a formal response and resolution from the Bureau of Prisons. Why shouldn't that be how we interpret our blue and gold waiver standard for an adequate PREA award objection? Well, Your Honor, I believe that the blue and gold and the Comint case pretty clearly addressed that issue, saying that a challenge to the solicitation does not necessarily have to take the form of a formal bid. Where does Comint say that? Where in Comint do you derive that comfort? What was that, Your Honor? Where in Comint do you find the comfort that you are claiming now, which is that a protest that is well short of a formal protest relieves you of the blue and gold problem? I do not recall the page citation. I can, again, I can get that. Well, it's pretty crucial, isn't it? I believe we did cite to that portion in our briefs, and in addition... You have a disagreement for federal claims from the judges down there about how much of a protest is required in order to avoid blue and gold waiver. I mean, you have Judge Costa-Williams thinking that your protest was adequate, and on the other hand, Judge Firestone seems to think that a formal protest is required. I don't mean to be harsh, but I would defy you to find anything in our precedent that has answered the question of what kind of protest is required. In order to avoid waiver under blue and gold. The government argues that a bright line test is appropriate, the point being that in cases like this, if there were a requirement that a bright line actual protest pursuant to the terms of the contract, here clearly laid out what your protest mechanism was, that unless you proceed along that course, there should be waiver, and the policy reason is that we will avoid cases like this. In the future, if cases like this come along where it's uncertain whether you put in a real, strong, complying bid or not, those cases won't come up because you will have made your protest in advance and you will have gotten an answer to your question. What is your strongest argument against a bright line rule in the blue and gold setting? Well, Your Honor, I believe that in a case especially such as this one, where Bantam repeatedly challenged the terms of the solicitation and repeatedly requested guidance from the BOP, and no such guidance was ever forthcoming. None was required, right? The law doesn't require any? I don't believe so, Your Honor. Where do you find a source of authority that required the agency or the Department of Justice here to respond to you, you not having made a formal request? I don't believe there is any formal such procedure. However, I do believe that in a negotiated procurement such as this one, the BOP, it would be, for one, in the best interest of the BOP to communicate with potential bidders. In this case, Bantam went all the way through the entire bidding process and never once received any notice whatsoever that its bid was insufficient in any way. In the solicitation, isn't there a provision in there that describes what a would-be bidder should do if it wants to protest the terms of the solicitation? Yes, Your Honor. There is a formal bid protest provision in the solicitation. Right. And then the FAR also indicates that if a would-be bidder has some problems with the terms of the solicitation, they should first try to work it out with the contracting officer or contracting specialist. That appears to be what you were trying to do with those couple of letters. Yes, Your Honor. But at the same time, there was never a protest submitted to that Washington, D.C. address. No, Your Honor. Bantam did not submit a formal protest, but it did, as you indicated, multiple times ask for guidance from the BOP. But if they wanted, if you made a formal protest, you would be entitled to an answer, I believe, within 20 days. Isn't that what the regulations provide for? Yes, Your Honor. And it also provides that you will hear from someone from the Justice Department within five days to schedule a conference. Yes, Your Honor. Again, Bantam was never aware that its bid was improper. Well, as you and I know so much. Well, it's puzzled because Bantam has been in this position before, the Blue and Gold case, which you know. And in the Blue and Gold case, the ruling of the Court of Federal Claims, which was the same as it was in our court, was based upon one of your cases, the Bantam case, earlier. Yes, Your Honor. Where there had been a question about what the government wanted from a contract, and there had been a failure of your client to speak up. Yes, Your Honor. Dismiss was the protester in that case, and I believe that case is distinguishable because in that case there was a clear, unambiguous contract term. And while here Bantam contends that it was a vague and ambiguous contract term. Can I ask, you have, as your principal complaint, the challenge to the inclusion of the PREA obligations. Assume for purposes of this question that that complaint is waived. Do you still press your other challenges to the ultimate award to the rival in the two cases, or do you give those up? No, Your Honor, because for... I'm sorry, a no is not a good answer to an or question. I believe that Bantam would not be waiving its rights on its other arguments because it contends that it was the higher bidder in one of the two procurements at negligible price difference. Have you preserved that complaint in this appeal? I didn't see anything in the briefs about that. Your Honor, I believe so because I don't believe the Court of Federal Claims ever reached the merits of that issue. Right, but I guess when the Justice Department offered as an alternative grounds for affirming the judgment below this notion of waiver, I understand you taking the position that, well, the Justice Department needed to file a cross-appeal in order to preserve that argument. But assuming we disagree with you on that, I didn't see anything, at least in the briefing, to suggest that nevertheless, if we were to consider and agree with the Justice Department's argument that you waived the right to challenge the solicitation term, nevertheless, you would still have recourse on the other side. I didn't see anything in the briefs that said that. Am I wrong? Your Honor, I believe it was very briefly mentioned because, again, it was our position that the Court of Federal Claims never reached that issue. I believe my time is up. Thank you. We will restore your three minutes of rebuttal. May it please the Court. Thank you. The Court should affirm the trial court's ruling that Bannum lacked standing to bring it to bid protest. The trial court correctly concluded that Bannum did not have a substantial chance of contracting wills because it did not submit a firm fixed-price proposal in response to this solicitation. The solicitation expressly requires offerers to provide a firm fixed-price contract proposal. I'm not quite sure I understand how that ground would apply to an objection to the terms of the solicitation. Your Honor, our... I see quite readily the waiver argument for the challenge to the terms of the solicitation. But then that leaves the evaluation of the competitors as a question of standing, which seems to me to turn on whether their bid was or was not one that, if accepted, would have bound them to comply with the PREA without any more money than the dollar amount in the contract. Your Honor, the issue of the PREA is not relevant to the issue of standing. The issue of standing turns on whether the proposal that Bannum provided reflected a firm fixed-price contract. As this Court recognized in U.S. v. IBM, a non-responsive proposal is the epitome of a scenario in which an offeror or a protester does not face direct economic harm. But what happened here on the fact, did the contracting officer actually consider Bannum's offers? I understand you have a position that it's a non-compliant offer. Bannum is telling us that if the offer had been accepted, they would have been bound by their own bid. And it appears, at least to me, but you can correct me if I'm wrong, that the contracting officer in both cases very much did consider those bids from Bannum and didn't make any indication of removing Bannum from the process due to some kind of non-compliant bid. Am I wrong? Your Honor, I disagree. We disagree with Your Honor. The issue of jurisdiction is a legal issue. I'm just trying to understand what actually happened. Sure, Your Honor. Am I wrong about what actually happened? Well, the idea that the BOP did not make a determination during the course of this procurement about the Bannum proposal being non-compliant, Your Honor is correct about that. But what the agency decision-making process entailed or involved is not relevant to this court's legal determination about whether or not the proposal was compliant, whether it met the FAR requirement for a firm fixed-price contract. In the trial court, in the papers on this, what were the two parties' positions about whether their last offer, their proposal, their bid would have committed them to complying with PREA without any more money than the dollar amount in their bid? Your Honor, I could point Your Honor to the record where Bannum indicates that its pricing was conditioned on its coming up with cost information. Well, we know what their submission was when you're talking about their protest. In the litigation in the CFC, what did they say? Some of it is sealed, and I haven't been able to get access to it. I've looked at in one of the cases, I guess it's either their preliminary injunction motion or their opposition to preliminary injunction, I don't remember, and I don't see this point in there. That is, I asked Mr. Huffman, was his position in the CFC that they actually did submit a firm fixed-price offer, and it's just a misunderstanding to say that they didn't, or was his position in the CFC, No, our bid really was conditional. We expected more money than the number in our bid if we had to comply with PREA. In the trial court, it was undisputed in the trial court that they did not provide a firm fixed-price proposal. It was undisputed. It was undisputed, Your Honor. I think he directly answered my question saying, no, his position in the trial court was that that was a firm fixed-price, because if it had been accepted, they would have been stuck with that dollar amount and all the PREA obligations. That was not their position in the trial court. Their position in the trial court, and it's reflected in the record, is that we're giving you pricing, but we have not factored in the cost information because we cannot. And I can point, Your Honor, to a document in the record. This is going to be in the 5085 record, which falls at JA11109, and this is the famous explanatory footnote one. And that position that they take in footnote one is not any different from what they took in the position they took in the trial court, which was we could not. Their position in the trial court was we could not provide that pricing that included the expressed requirements of Amendment 5 in 5085. Do you have something in the record you can point us to that indicates that Bannum's position in front of Judge Coster-Williams or Judge Firestone very clearly stated that the offer that they did present and that was actually evaluated was not actually an offer that anyone could be bound by? Your Honor, I believe it's in their briefing before the trial court. Do you have the record page number? I'm pointing to the record page number at 11109. Right. We know about the letter. Now we're on to the stage of the litigation in front of the Court of Federal Claims in both cases, and that's where I'm interested in knowing. Right. They do take the position in the trial court conceding that they did not provide firm fixed pricing. Do you have a record site for that? In terms of the record, the briefing, I don't have a site in front of me, but it is in the trial court briefing. Okay. Maybe one of your friends has it. Yes, Your Honor. Sealed? A lot of the materials are sealed. Well, no, it should be in the actual briefs. I mean, their position in the briefing was that they did not provide, recall, Your Honor, their basic argument. Their basic argument is that they could not provide complete pricing that incorporated the PREA requirement because of the cost entailed. Because they were unaware of the cost that PREA would entail. The difference between saying, you know, I'm unable to make any pricing because of this, on the one hand. On the other hand, it doesn't matter. Please take my offer as firm and fixed. That's what the competitor said. We'll eat the cost if there are any. Yes. Dismiss may have said that, and AWS may have said that in 5086, but Bannum never said that. Your Honor, and I'll point to the language in 11109. It says, and this is no different from the position it took in the trial court, it indicates in footnote one, it is not remotely possible to begin to attempt to formulate a cost or price proposal for the addition of PREA. There was no disconnect in their briefing before either Judge Costa-Williams or Firestone related to this position. They simply could not reach the extra issue of the PREA requirement. Can I just go back to the doctrinal question, which you wanted to talk about early? What case of ours holds on facts, and not just states more broadly than the facts may have warranted, but actually holds that a non-conforming, non-responsive bid by an actual bidder disqualifies that bidder from a post-award protest of the terms of the solicitation? I would say U.S. v. IBM. In its holding, this court indicated a non-responsive bidder as the epitome of one who lacks a direct economic interest and essentially standing. Was that challenging the terms of the solicitation or challenging the evaluation? That case involved a non-responsive bidder, Your Honor. I think I haven't made my question clear enough. A post-award protest can complain of two different things. The terms of the solicitation were illegal, bad, in some way defective. The other is, we're not complaining about the terms of the solicitation. We're complaining about how the agency evaluated the bidders. Now, was IBM a case in which the challenge was to the terms of the solicitation? I'm trying to recall, Your Honor. Or is there any other case? Because it seems to me this world is divided, and it truly depends on the challenge, on the nature of the challenge. And again, the waiver issue is all about challenging the terms of the solicitation. But if that's true and if you're right about waiver, that still leaves the question whether the challenge to the evaluation of the two bidders was actionable. Your Honor, if I may, in putting aside the waiver issue, the standing issue stands on whether or not the proposal was responsive, was compliant with the requirements of the solicitation. That requirement, whether or not a firm fixed price was provided, is governed by the FAR. The FAR, as a legal matter, defines what a firm fixed price contract is. Under Part 16.202-1, the FAR defines a firm fixed price contract as one that doesn't take into account the contractor's cost experience. Here, what Bannon is trying to do is upending that requirement by saying, I'll give you a price, but it's not a full price because we don't know what our cost experience is going to be here. Isn't your argument that the standing issue is the same in your view with regard to both the issues, both of the terms of the contract and the evaluation? Namely, that because Bannon didn't submit a firm fixed offer, it can't be a competitor who could possibly have won the contract? Exactly, Your Honor. And therefore, there is no jurisdiction under a case law? Exactly, Your Honor. Yes. Isn't that at the bottom of your argument? Yes, yes. So the juncture... My question is, have we ever so held when the challenge is to the terms of the solicitation, an actual bidder, right, who submits a bid that violates the terms of the solicitation and then complains, saying, I can't submit a bid that is within the terms of the solicitation and I shouldn't have to because it's illegal what you demanded of me. Have we ever said, you can't bring that? I can't recall that there is precedent on that. I would imagine we would have cited it if we had found it, Your Honor. If you take out of the equation the argument that Bannon failed to submit a compliant offer and therefore can't be considered to have even been there to play, if you take that aside, then you would concede, would you not, that Bannon meets the substantial chance of winning the contract test? It does not meet the... Well, what would it mean if you take that aside, if you lay that issue aside? Bannon clearly had a chance to win the contract. But, Your Honor, I mean... What I'm trying to do is to isolate, isolate. I mean, your whole case hangs on, does it not, the decision by the Court of Federal Claims that this offer was non-compliant? And because it was non-compliant, Bannon was treated as though it never appeared? Yes, Your Honor. So we would, I mean, if it were compliant, then they would fail under the waiver doctrine because they did not bring a pre-award protest under the rules governing agency protests under the FAR and the Justice Acquisition Regulations, as well as the express terms of this solicitation. But just as to the challenge to the solicitation, the waiver rule does not apply to the evaluation... Of course, Your Honor. How could it, right? Yes, of course. It only applies to the express terms. What is your position about whether in their briefing here, whether in their reply brief in response to your waiver argument or otherwise, they have preserved their challenge to the evaluation of the competitors as opposed to the inclusion of the PRE obligations in the solicitation? We don't believe they've preserved these issues, Your Honor. I mean, the issue that they isolate in both 5085 and 5086 is a standing issue. I mean, they may throw in, you know, random comments to the merits, but that is not the issue that they place before the court. Well, they challenge the merits below, right? Well, the... In both cases. The trial court didn't reach those issues. So they trial, they set up exactly what happened. They came in and they said, well, we've got an argument on the terms of the contract. We've got an argument also on the evaluation. And the Court of Federal Claims decided the entire standing issue on the terms of the evaluation, the terms of the contract, right? Yes, Your Honor. So why would it be inappropriate to say that the Court of Federal Claims has required, limit the waiver doctrine to the terms of the solicitation as opposed to the evaluation? Well, the waiver doctrine goes to patent defects in the solicitation. And what Bannum, and it's a conceded issue, Bannum is raising a challenge to the term of the solicitation, the incorporation of PREA. That is a patent defect, but it should have been brought pre-award. The waiver doctrine... I think what we're talking about is, say, for purposes of argument, the Court were to agree with you that there's a bright line rule here, and they didn't make a sufficient protest in order to avoid the rule of blue and gold, namely that they're challenged to the terms of the solicitation or out. They lose on that. But we have pending, hanging here, an argument that Bannum would make, say, even so, even if we can't upset the apple cart in our protest on that ground, we think that we should have won the contract. Yes, Your Honor, but, again, the trial court did not reach those issues. It only reached the jurisdictional. The courts only reached the jurisdictional issue. So the idea that, I mean, what Your Honor is suggesting is that this court take up the merits? Is that what Your Honor is suggesting? Well, the merits haven't been addressed by the court below, right? Right, Your Honor. You'll remember the last little subsection of comment in talking about the compliance says basically same issue, merits, and standing. Right, but, I mean, I guess we should define terms. When we talk about the merits, in 5085, they raised an additional issue about the 120 days, the compliance issue related to distances, 120 days. And the merits issue in 5086 had to do with whether the contract awardee could comply with the requirements that sex offenders be housed in a particular way. So that's what I assumed Your Honor was addressing when you were addressing the merits issues. Those issues were not reached by the trial courts below because they made a jurisdictional ruling. So those are the, I'm sorry, perhaps we were talking about different issues. Right, so if we were to reverse the lower courts on standing, but then at the same time say we agree with you on waiver of the challenge to the solicitation terms, then in each case there would still be a piece that would go back to the trial court? I guess that's what we're trying to find. Right, but those, again, I agree as we discussed earlier, those issues were not preserved. The only issue that Bannum raised in these two appeals relates to the standing, as reflected in the appellate, its opening briefs in both appeals in this court. I think maybe we should give Mr. Tomasek, Thomas Duck, sorry, a chance. May it please the court, I represent Dismissed Charities, Inc., the intervener in case number 14-5085. I have five points I would like to make. Number one, the RFP specifically required the offerors to provide firm fixed unit prices. Can you address this question that we've been trying to nail down about what was said in the CFC litigation, particularly by Bannum about the nature of the bid that it submitted, whether it really was firm fixed price or wasn't, which I take it, and you can correct me if I'm wrong, to be equivalent to saying if that had been accepted, would they have been bound by the dollar number in that bid to do all the PREA compliance? I think the answer, Your Honor, is their proposal was equivocal and their arguments before the lower court were equivocal. However, Judge Williams in the record at joint appendix 30016 states, I'll let the court get there. Which record? I'm sorry, the joint appendix in 14-5085, which is the only case with which I'm familiar. Okay. 300 what? One-sixth, Your Honor. Okay, thank you. And Judge Williams in the third paragraph states, Bannum contends that its bid was not qualified as it submitted a specific price that would have bound Bannum had it been selected. And by not qualified there, they mean not conditioned as opposed to not meeting the qualifications. I believe that is correct. It's a terrible word, qualified, on this point. And Judge Williams considered that argument. I think, in fairness to Judge Williams, Bannum's argument was equivocal before the court as its proposal was equivocal. Look at the joint appendix, the same joint appendix in government counsel. What is equivocal about saying that it submitted a price that would have bound it if it had been selected? Isn't that saying that it did not intend its bid to be somehow impaired by its earlier contentions that it was unable to know what the PREA cost would be? That's a fair comment, Your Honor. I was characterizing the arguments of Bannum. But doesn't that answer what the presiding judge has been asking several times, which is what was Bannum's position in front of that court and why we would have been bound? That's what I pointed out. But Judge Williams specifically took that point on in the text which follows. She went on, didn't she, to say, in essence, that it would have been against the law for the government to have accepted their bid. Yes. She concluded, number one, that it wasn't an appropriate argument because it was belied by the record. And it's belied by the record not once, not twice, but three times. In the joint appendix at 11109, in the joint appendix at 11152, in the joint appendix at 11116. There are three instances in the record where Bannum is taking issue with the RFP requirement that you submit a firm-fixed price. Here's, I guess, part of what I'm concerned about that. This is all on summary judgment, right? And what we have in the agency record is their various statements in their proposals, which do tend to suggest that their bid was conditioned. On the other hand, there is this fact that the agency appeared to have treated it as meeting the solicitation requirements. How does that record not present a factual question as opposed to one that can be determined on summary judgment? I think to the extent it is a factual question, Judge Williams considered it and resolved it. On summary judgment? On motions for judgment on the administrative record. This was an expedited temporary restraining order preliminary injunction hearing. She was trying to get this case resolved before the turnover of the contract. And she considered it, and I would respectfully submit that this court should apply a clear error standard to that finding of fact. And there is absolutely no error in Judge Williams' decision that the proposal that Bannum submitted was non-responsive, non-compliant, and that deprived her of standing to consider the arguments on the merits. Which I will note, if you turn to the very next page of the record which I cited, Judge Williams then goes on, and I'm at the joint appendix at 30017, she goes on to state in the last sentence of the first full paragraph, the court deems it prudent to examine Bannum's protest grounds and assess their likelihood of success on the merit. And then in the next three pages she proceeds to assess the likelihood of success on the merits because she's considering injunctive relief, and of course that's one of the requirements. So Judge Williams, number one, was required to consider whether she had jurisdiction, and in doing so she made findings of fact which we respectfully submit are perfectly appropriate and justified by the record and are not clear error. Nonetheless she went on to consider the merits of Bannum's protest which she concluded would not pass muster. And accordingly she denied the protest, and there's no error in that. I would submit on this point, and in response to one of the questions that Judge Clevenger raised, this case is very much akin to the facts presented in Comet. What happened in Comet? I think I've got Comet, and you're almost three minutes over your time, so I think it's time to hear from Mr. Huffman on rebuttal. Very well, thank you. Thank you. Thank you. Give him five minutes, please. To address a couple of questions that you had asked previously, whether or not there was any citation for Blue and Gold stating that just some sort of protest has to be submitted, that was not actually in Blue and Gold or Comet. It was in a Court of Federal Claims case called DGR Associates v. United States. It was cited in our brief, and it says that all Blue and Gold says is that a party must have done something prior to the closing date to protest the solicitation error before raising the same objection. In DGR there was a formal protest. Well, Your Honor, I believe DGR was intentionally general. Right. In DGR there was a formal Stop the Eyes and Cross the Teeth protest. There was a protest at the agency and then at the GAO, all according to the book. That's right, Your Honor. I believe that Judge Williams determined that Bantam had not waived its rights in the protest, and I would direct your attention to the 5085 record at 30,019. Can I ask you a question that I explored just a little bit about whether there was anything, I'll use the term procedurally improper or premature or jumping the gun, in making a factual finding? And the answer may be no, this is the way it's supposed to work, and I'd like you to explain that to me. In deciding whether your bid, I think Judge Custer-Williams simply rejected your position, which she describes, which I'd forgotten. So she says, you actually did say no, no, we offered a fixed price, made a fixed price offer, and she says, no, you didn't. And then we have the words you used in the various offering letters, and then you have the fact that the agency treated it as in compliance with their solicitation request. Was it proper for her to make that finding in the procedural context, and can you explain why yes or no? Well, Your Honor, I don't believe, Bantam obviously contends that. I know you disagree with the finding. My question was whether it was proper in the procedural context for her to make that finding. Can you repeat that question again, sorry? If this were summary judgment, which I gather it was not, findings fact would not be appropriate on a record that contains evidence pointing both ways. So what was the context here? A motion for judgment on the administrative record, a motion for preliminary injunction, et cetera. What is it that allowed the finding that your offer really, really, really was not a firm fixed price offer, even though the Bureau of Prisons seems to have treated that as sufficient? In 5085, Your Honor, it was a motion for preliminary injunction. And that's all we have in front of us, is the denial of the motion for preliminary injunction, or was the case closed? The case was subsequently closed on, I believe it was a cross motion to dismiss, if I recall correctly. And what about the other case? And the other case was a motion for judgment on the administrative record. Okay, so let's take the motion for judgment on the administrative record. Did you agree that the case should be fully resolved on that motion, even if factual findings were necessary to resolve it? Well, Your Honor, in that case, I believe, again, there was also a cross motion to dismiss. So I believe Judge Firestone had made the decision to dismiss the case on the standing issue before reaching that issue. I think there's an argument here that the issue that the judge was considering below was a jurisdictional issue. Because if absent standing, there's no jurisdiction in the Court of Federal Claims to proceed. Isn't that correct? Yes, Your Honor. Okay, so isn't a court entitled to make jurisdictional fact findings as a general proposition? In general, Your Honor, yes. Okay, let me ask the next question, which is, is there anything else that could have been added to the record on this question that the presiding judge has pursued, which is, was the bid qualified or not? What else would go into the mix to decide that case other than what was in front of the judge? I believe, Your Honor, that the record was substantially complete. So, I mean, assuming that you backed off and had a fact finding hearing, we have no reason to believe the judge would have reached a different conclusion. I apologize, can you repeat that? There's no, the question that's being debated here is whether or not there was a procedural defect in the proceedings below. That is to say that Judge Costa-Williams made a fact finding she shouldn't have made in that setting, meaning she could have made it in a different setting, right? I believe so, yes, Your Honor. And so if the record was complete, nothing else would be added. Isn't it harmless error that she made the fact finding in this proceeding as opposed to in some other more proper proceeding? Oh, I apologize, Your Honor, I misunderstood the question. In 5085, because it was dismissed prior to, dismissed in the course of the motion for a preliminary injunction, I don't believe that we received a full, there was no full administrative record, so I don't believe, so I believe a full administrative record would have been possible. I was asking you, what else? I mean, that she had the things that have been cited by your adversary, 11109, 11152, 11106, those are all supposedly the conditions that have to do with Priya. So there's nothing else in the record that's adverse to your client on the issue, and what else would there besides plaintiffs respond to additional authority February 25, 2014, were you content that the bid was not qualified? Well, Your Honor, I believe that in the source selection decision, at least on the 5086 matter, I don't recall, I believe it was also in the 5085 source selection decision. There were clear indications that Bannum's bid was deemed acceptable. Okay, Mr. Huffman, I think we've had your rebuttal, and we will take the case to the advisor. Thank you, Your Honor.